Thank you, Your Honor. Good morning, and may it please the court. Michael Rubin for Mr. Bayer. I would like to reserve five minutes for rebuttal, if I may. The issue on this is whether Neiman Marcus violated the first clause, Section 503B of the American Heart Facility Act, which prohibits employers from coercing, intimidating, threatening, or interfering with any individual exercise or enjoyment of ADA-protected rights by establishing a policy that is imposed as a condition of continuing employment that applied to two of Mr. Bayer's pending ADA charges with the EEOC, and that would have stripped him of at least a dozen ADA-protected rights. A policy that so targeted protected rights that several courts in different contexts have struck down that policy as unconscionable. Unlike the retaliation provision in the ADA, which is Section 503A, the interference provision, 503B, says nothing about causation. The retaliation provision applies when an employer engages in conduct in response to protected action. For example... Mr. Rubin, wouldn't you suggest that words on account of mean something like causation? Absolutely. Now, what you will note is that in Section 503B, there are three clauses. This case arises under the first clause, where there is no reference to on account of. The on account of is only clauses two or three. So, let's break 503B into its three parts. The part of the issue in this case, which has no causation requirement, says, and I'll quote, It shall be unlawful to coerce, intimidate, threaten, or interfere in any way in the exercise of enjoyment of, and I'll do an ellipsis to the end, any right granted or protected by this factor. The second clause does have a causation requirement. You're absolutely right, Judge Whaley. It shall be unlawful to do that sort of interference on account of a prior exercise or enjoyment. And the third clause says it shall be unlawful to interfere on account of having aided or encouraged another in the exercise or enjoyment. But the reason that this court in Brown, the D.C. Circuit, just last month in Minokin v. Dillon, pointed to the distinction between the first clause of 503B and the retaliation provision in A, is the same reason 503B is different from the first clause of 503B is different from that second and third clause. There is no on account of language. Let me add, I think I understand that. I want to just make sure I understand a couple of other things. In looking at your statement of the issues, the first statement of issues seems to be that Bayer's rights and anyone who worked there's rights were violated by the issuance of the new policy. And it doesn't require anything but the issuance of the new arbitration policy under Issue 1. That was unlawful. It would be interfering with anyone who may have a claim, regardless of their knowledge. And then the second issue you seem to be telling us is that you're looking at the conduct of Neiman Marcus after it issued the letter and stopped dealing with your client, including the litigation history. It seems to me that under Issue 2, it was issued for years that the company was bound by the rights to the arbitration agreement, which I'm assuming would have been in the litigation history because they didn't deal with him directly after the 20th of July. Is that correct? It is correct. There are two separate and independent grounds on which Neiman Marcus interfered. The only relief we're entitled to at this point, if there was a violation of either piece of rights, is nominal damages. It looked to me like reading the district court's position, they only addressed the efforts of the two employees that talked to him about the arbitration agreement. And there's not any reference in the opinion about the fact that what they did in the litigation process would be interference. Well, not exactly. Not exactly. It's true that the conclusions of law focused on that. But let me start with the findings of fact. You are correct that findings of fact 13 through 17 address the first issue. Those are the findings that confirmed that Neiman Marcus imposed this right stripping agreement and provided that the only way Taylor Bear could keep his job, his health benefits, and his right to reasonable accommodation on the ADA was to be bound by this agreement that he refused to be bound by. But the court also found in finding of fact 35 that on and after July 15, 2007, and continuing until this court held the arbitration agreement unenforceable on July 3, 2014, Neiman Marcus continued to adhere to its position, including in a series of filings in federal court that Bear had consented to be bound despite his repeated objections. So our point is simply all of the factual findings necessary to establish the violation of the first clause of Section 503B were established and found by the trial court. Where the trial court, Judge Magistrate Judge Hickson, went wrong was in saying that there was an additional requirement in the first clause of 503B that required singling out this agreement and the enforcement of agreement enforceable on monetary sanctions. If Bear did not succumb and agree to be bound, that violated the first clause. The thing that got me going on this was, if you look at number two, it would seem to be that you would have a causal connection if you're right. Yeah, I'm not sure. But if the litigation strategy is certainly could be on account of and found to be caused by injuries can be caused by the deliberate decisions of Bear, which would not have been before they knew the injury. So it seems like what you're saying is that if you if you maintain a litigation strategy based upon a theory that's ultimately rejected, that that's interference, even though it happens through through litigation and not through any sort of communication between the defendant and the plaintiff. I largely agree with that. Judge Whaley, when you have a continued course of conduct that extends over seven years as here, where the company insists that a party is bound by a right stripping agreement enforceable by monetary sanctions. That actually could have been prosecuted by us as a 503, a retaliation claim. And that does, in fact, satisfy any causal requirement that may exist in 503 B because it was unquestionably directed against Taylor Bear individually. It did single him out. The theory of our case, though, is that we don't need to prove that 503 B, a sorry, 503 B does not require it. And while you are absolutely right, we could have shown causal connection through that second theory we presented where we did not present the case on a causal impact basis. But going back to the causal impact basis, when we rejected the verdict, does that answer the question as to the standard? Yes. Yes. Under 503 A, McDonnell Douglas does not apply in these cases. There's no need to show intent. There's no need to apply McDonnell Douglas in order to infer what the intent would be where it's not clear what the intent is. That's the standard that should apply in this case. We know, in fact, through another finding, a fact that the magistrate judge made that would be finding 33 that Mr. Bear, in fact, quote, felt intense pressure and coercion. That period and fully expected to be fired. But under an objective standard, it wasn't even necessary to show that he subjectively felt that pressure. In fact, when you impose policy, whether through an arbitration agreement or not, Neiman Marcus could accomplish the exact same goal by having a standalone policy, having no regard to arbitration that said, if you want to continue work, you have to give up your statute of limitations under the ADA. You have to agree that the conciliation process cannot extend more than one year before termination. You have to agree to give up your right to prevailing fees and costs. You have to agree that you would be subject to sanctions if you challenge this. That Texas law would apply even if you're a California employee, even if you're making California claims. That we can add two more judges to your case if we disagree. They could have done that outside the context of an arbitration agreement. The interference would have been the same. The impact under Section 503B of ADA would be the same. It's a violation. Let me ask you that. With respect to this constricting of the rights under the ADA, whether done by policy or by the mandatory arbitration agreement, does that mean that any time they ask an employee to sign a mandatory arbitration agreement that contains some constriction of the statutory rights, that it would in fact be a violation? Yes. And what the court should do is it should enjoin, as we saw here, enjoin the application of that involuntary. If the employer says you cannot work and enjoy the health benefits and the right to ADA accommodation, unless you succumb to this right stripping agreement, that would be a violation of 503B. Would it matter whether this was at the outset of employment or during employment? No, no. Future employment, continued employment, it would still have, and we go back to the language of the statute, it would have the effect of threatening, intimidating, coercing, or interfering with the enjoyment or exercise of protected rights. If I may reserve the remainder of my time. Thank you. May it please the court. My name is Theodore Ali, and I represent the appellee, Lynn Marcus. The district court corrected the standard to Mr. Bayer's claim under Section 503B of the Americans with Disabilities Act, relying on authority from this court and numerous other district and circuit courts. In doing so, the district court required an appellate to show that he exercised a right under ADA, that Neiman Marcus interfered with that right, and that there was a nexus between the two. I'd like to address a couple of the arguments that were raised by my esteemed colleague, Mr. Rubin. He argues that the arbitration agreement's terms were right stripping and took away his day in court and interfered with his ADA rights. Neiman Marcus did not take away any legal rights. It just shifted them to arbitration, which is encouraged by the judiciary and the ADA. Further, this court has already found in Bayer v. Neiman Marcus' holdings at 582 Fed Appendix 711 that Mr. Bayer was never bound by the Neiman Marcus arbitration agreement. As such, the terms of that agreement are not an issue. Instead, this court and the district court correctly determined what is relevant here is whether Neiman Marcus' conduct surrounding the arbitration agreement interfered with his rights under Section 503B. I also want to go to the second point he made, that somehow there should be three different standards with regard to interpreting Section 503B. That the first part does not require any type of nexus, but the second does. That is clearly not the goal or the intent of the legislature to have three different burden-shifting standards with regard to that. Let me ask you, let me stop there, Ms. Lee. The language of the statute says what it says. Correct. When you say it's not their intent, we all know that because of and on account of have become magic words in the employment statutory context. But those are not in the first clause. So you would have us insert what the legislature didn't by your interpretation, would you not? Your Honor, I would have this court rely on its reasoning in the Brown case, where the court went so far as to the edge of deciding the applicable standard on whether to apply a burden-shifting analysis from the FHA case to a Section 503 case. The court stopped short of determining the test for what constitutes inference, but this court specifically laid the framework to support a nexus requirement between a defendant's alleged interference and the plaintiff's ADA rights. In fact, this court went so far as to talk about 503B being modeled after the FHA's anti-interference provision and required a nexus. As you pointed out in the Brown decision, that section is identical. It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of or on account of his having exercised or enjoyed. In Brown, the court did not apply McDonnell-Douglas burden-shifting framework, which has that causal element. Instead, the test laid out seems to be a little bit different. So I'm not sure that Brown helps you. It seems to cut the other way. Actually, if you take a look at the decision in Brown, and it went through the similarities between the Section 503B and Section 3617, and it says it provides strong guidance that they should be analyzed under the same standard. The court then went through the legislative history, showing that it was modeled after that. And then the court's interpreting Section 3670 shows that this court clearly requires a causal connection for anti-interference claims made under the FHA Section 3670. In the Walker case, this court found that a claim for interference under the Section 3617 requires a causal link between the enjoyment, practice, and the alleged interference. So that court, and then going on, based on your decision in that case, the Brown case, the district court found the standard burden-shifting unworkable in an interference case. That's exactly right. Instead, the Walker court adopted the test to require the plaintiff to show he was engaged in a protective activity, he suffered an adverse action in the form of coercion, intimidation, threats, or interference, and that there was a causal connection. Okay, so they applied the causal connection requirement in Walker in the uniform fashion. What you didn't do is you didn't make a decision on those facts because you found that there was a tribal issue of fact. This court remanded this case back to the district court for proceedings. It was briefed before Judge James as to whether a causal connection should apply. She denied our motions for summary judgment based on that and went to a bench trial where it was found that there was no interference under these circumstances. Counsel, if we disagree with your reading of the case law and agree with the plaintiff's argument that no causal nexus test applies, then what? Does the plaintiff prevail? Is he right that there's no further factual findings to be made? If you look at the factual findings that were made, and they were quite detailed, even without a finding of a causal connection, there can be no interference. The effect of any type of ruling that just rolling out an arbitration agreement would interfere, would prevent any employer from actually rolling out an arbitration agreement. As this court actually said, there's no way you can say that the simple rollout of an arbitration agreement has the interference with ADA rights. That's illogical. I believe the reasoning that you all made in Walker fairly suggests that. And then I'd like to also focus on the fact that if you were to accept bears interpretation of different tests for Section 503B, depending on whether the alleged interference involved the present practice of an ADA protected right, as opposed to a past factors aiding, that would make no sense. This interpretation leads to an illogical result. The proposed reading would essentially end the use of employment arbitration agreement for the fear of violating Section 503. This again leads to an untenable result. And that is not the intent of that section or the legislature. And they enacting that. And particularly here, he continued to be employed months, even a year after he did not sign this court rule that the arbitration agreement did not apply to him. He admitted in his that after he submitted his letter, which was July the 10th, that no one contacted him or tried to intimidate him or do anything. He acknowledged specifically that they gave him a free rein. And therefore, there is no evidence of any threats or pressure on him to sign. He remained employed. And so there's been no interference here. So I like to also address this issue that this court specifically rejected the tends to chill standard that the appellate is seeking here. First of all, in the Brown decision, you you found that the case law interpreting the FHA's anti interference statute more persuasive. Second, you there are a long line of pieces in the circuit and district courses discussing the nexus and causal connection standard. And all of those cases have applied that. And I can. Obviously, at one point with respect to Brown, although there is analysis under the FHA, the court did did say that it should also look to the FMLA and also the NLRA in terms of interpretation. So I think that and of course, it's a little bit different situation in Brown, but there may be some collision in how those statutes are interpreted. Because the employment context is, of course, different from the kind of events that occur in a housing context. So what do you make of the court's reference to the fact that we should also be looking to the FMLA and the NLRA? I well, the those particular provisions are not identical, like the FHA's anti interference statute. So I would direct the court to follow its reasoning in Brown and specifically look at the analogous language and find that there is a nexus between the conduct that is required. You know, we also bring your attention to the authorities that we cite in our brief of the Sixth Circuit. I understand it is is not demanding upon you, but it is persuasive. The Sixth Circuit in the Michigan protection cases, the Seventh Circuit in the Franks cases, the Second Circuit in the Lovejoy-Wilson case, all found that a causal connection is required for interference claim under the ADA. This court should adopt the nexus and causal connection under the 503B interference claim here. Various district courts made that same ruling. And if you look at the authorities, the plaintiffs do not put in front of you, but one case where a court who basically gave short shrift to your decision and found that there was no causal connection. All of the well-reasoned decisions of all of the courts have applied that standard to a 503B. The other thing that I would suggest is that, you know, I want to address the argument that Judge Whaley raised about the continued enforcement of the arbitration agreement. That would not be an interference. And the reason that that would not be an interference is because Neiman Marcus's attorneys are the ones who would have made the decision to actually pursue a compel arbitration. And in that particular case, I want to bring to the court's attention its decision in Hagendorf v. Brown, where it says the actions by a party's attorneys are absolutely privileged when made during or prior to a judicial proceeding in order to achieve the object of litigation. Neiman Marcus's attorneys decided to compel prior lawsuit that he brought to arbitration. Of course, the court found it didn't apply to him. And this court's decision in Louie v. Kharachoff is directly on point for the application of the litigation privilege. There, the plaintiff made a section 503B claim by arguing that the defendant's motion to compel further discovery responses interfered with his ADA claim. This court dismissed the claim by finding motions to compel appropriate steps in litigation. So to hear Neiman Marcus's motion to compel appellate's prior claim to arbitration would also be covered. And Your Honor did mention something about a discriminatory effect, but there is no evidence in this record showing or establishing discriminatory effect to sustain a 503B claim. As you know, that was not submitted. There was no evidentiary record on that. As this court is aware, discriminatory effect is shown by statistical disparities with a large number of protected class over other classes, and the appellate here failed to provide any statistical information or evidence from other employees on how the arbitration agreement affected one class over another. So, based on the record before the district court, we believe that this court must uphold the district court's well-reasoned decision. Thank you. Reuben? Thank you, Your Honor. While I would be happy to address any of the cases that counsel discussed, we did address them comprehensively in our briefs, and I would stand on that discussion absent specific questions. I want to focus on the fact that... So, would this create a circuit split to go your route? Oh, absolutely not. No, the D.C. Circuit said that whatever the standard happens to be, the plaintiff in that case satisfied it for motion to dismiss purposes. So, all you would be doing is explaining in greater detail how the standard applies. I don't think that the D.C. Circuit didn't land on a standard. Isn't that correct? That's correct. And so, I'm asking you to leave the D.C. Circuit aside. Would a ruling in your favor create a circuit split? Absolutely not. In fact, this court in the Brown case did address the authorities from the other circuit, including the Sixth Circuit, and explained why there's no inconsistency. And it concluded at page 1193, the plain language of Section 503B would clearly prohibit a supervisor from threatening an individual with forced retirement unless the individual foregoes a statutorily protected accommodation. That is effectively this case. So, all we're asking you to do is... But we have the Brown case was in 2003. That's correct. Do we have anything since then? No. We haven't had a point from another circuit. No, there are no other cases on point. We've addressed each of both parties, have addressed every case, district court and court of appeal. There actually hasn't been a lot of litigation on this provision, but there would be no circuit conflict. And this is simply a case where the company, even if it did not single out Mr. Baer, accepting that second respect that Judge Whaley pointed to, it absolutely targeted EDA protected rights and forced him to forfeit those rights. And as the court pointed out in its finding of fact 16, it made clear that the consequence of Baer refusing to be bound by the agreement would not only be the loss of his job, but, quote, the loss of his health insurance, benefits and salary. This was clear intimidation, threat, coercion and interference should have been able to get an injunction against those ongoing threats at the outset of this litigation. Unfortunately, it's taken many, many years to get to this point. Now, at a minimum, we're entitled to nominal damages for the reasons set forth in this court's 2014 opinion. Mr. Rubin, I'm trying to understand it from a trial standpoint. It was trying this lawsuit. And it seems to me what you're saying is that you would direct you would direct a verdict to a jury that the the rolling out of this program was an interference. And the only question is only question. And so you get an injunction. You don't have to have anybody that had a claim. You would be able to join that process on behalf of an employee. By having rolled that out because it's interference. That's right. There is no right to a jury under 503 B. But that individual as to an individual who was protected by the A.D.A., particularly where the individual had two pending charges that were covered by the agreement. But I'm trying to go beyond that. I'm trying to say if I might potentially have an A.D.A. In other words, you don't have somebody right now that's actually filed a claim. You just have somebody is worried about it, that they might have a claim. And it seems to me you're saying that if I had a jury instruction, which the court has to do the same thing a jury does, you have to figure out what the elements of the offense are. You would say that I would I would tell myself that this this would this policy would intimidate someone who had a potential A.D.A. claim because it's asking them to do things that they otherwise wouldn't be required to do. So I could enjoin that before you ever filed a claim because it would have that effect. And then if it was a damaged place, the only issue that I would have to determine is whether there was a probable injury. Right. There are no damages available under the section either. But, yes, if you were to conclude as a factual matter that that individual was so situated that the rollout of this policy and that individual's case would have the effect of interfering with that individual's exercise or enjoyment. So you would have to consider the extent to which the A.D.A. applied and the extent to which there was a likelihood of a chill or other interference with exercise of those rights. Then you would say that as to that individual, there must be an opt out option provided. You can't force that individual to give up the job benefits and accommodation. But in this case, obviously, they're a cut as to what you're saying is that if a large company to have a lawful program like this, you'd have to have an opt out in the language of it. Well, there are two options. Certainly you can make it voluntary by having an opt out or you could make it lawful. Now, there are arguments that could be made under Section 12212 of the A.D.A. Why arbitration agreements are involuntary and permitted under the A.D.A. But assuming they are, all they have to do is make it just another forum and not a right stripping agreement. And that largely protects them. Where Neiman Marcus went wrong here is that it imposed this agreement on pain of all that forfeiture that one by one took away rights. That was the whole point of the arbitration agreement. It was to prevent people from being able to satisfactorily exercise statutory rights. And that's an interference with our ability to enjoy and exercise A.D.A. protected rights. So if you have a case where that individual is likely, as a result of the rollout, to feel interference or chill with the reasonable exercise for enjoyment, based on how that individual is situated, then yes, the appropriate thing for a trial judge would be to enjoin the application of that agreement as to that individual. But the employer can avoid the problem by either providing an opt-out, making it post-dispute, otherwise making it voluntary, or ensuring that there's no deprivation of A.D.A. protected rights. So the upshot of this at the end of the day, given where your client is, would be nominal damages plus attorney's fees. That's correct. Thank you. If there's no other questions from the panel, then the case just argued at Bayer v. Neiman Marcus is submitted. I do want to thank both counsels for the actual briefing as well as the argument. Thank you. Thank you, Your Honor.
judges: McKeown, Nguyen, Whaley